## WALTER PERRY, BANK COMMISSIONER
vs.
## THE EAST HAMPTON BANK & TRUST CO.

| Superior Court | Middlesex County | File #6926 |

Present: Hon. ERNEST A. INGLIS, Judge.

Edward J. Daly;
Joseph A. Levy,                     Attorneys for the Plaintiffs.

Bertrand E. Spencer,                Attorney for the Defendant.

## MEMORANDUM FILED APRIL 21, 1937.

INGLIS, J. The bonds referred to in these various motions are all coupon negotiable bonds which belonged to the various applicants respectively or to persons to whose rights the applicants have been subrogated respectively. They had been lost by or stolen from those owners and were taken into the defendant Bank by its former treasurer and executive officer Brott, (who had full authority to make loans) as security for loans made by him from bank funds to either one Berman or one Vallon. These loans were made pursuant to an understanding between Brott, Vallon and others that the proceeds thereof should be used in the business of dealing in Irish Sweepstakes tickets, it being agreed that Brott would participate in the profits of that business and at the time Brott took the various bonds he knew that they were stolen securities.

The only question raised on these motions is therefore, as to whether by those transactions the Bank took good title to those bonds as against the lawful owners of them. This turns upon the question as to whether the Bank was, at the time the securities were taken, chargeable with the knowledge that they were stolen which was in the possession of Brott, its agent.

The law on this subject seems to be well settled in this State. It starts with the proposition that there is to be imputed to a principal all knowledge gained by the agent while acting as such agent in the course of his agency. Then there is the exception that that rule does not hold when the agent,

though nominally acting as such, is, in reality, acting in his own interests and adversely to the principal. Then finally there is the limitation put upon that exception to the effect that it does not apply to protect the principal where the agent in serving his own ends commits a fraud and the principal is seeking to accept the fruits of such fraud.

**Davis-Scofield Co. vs. Agricultural Ins. Co., 109 Conn. 673.**

To put that final limitation in another way, in a case in which the principal is claiming as his own, property which came to him through some act of an agent he is not permitted under the law to claim the benefit of that act without also admitting as his own the knowledge of the agent with which the act was done. If the principal after knowledge of the agent's fraud repudiates the transaction, that is one thing, but if he does not repudiate the transaction but rather seeks to hold on to the benefits accruing to him he must take those benefits, such as they are, subject to any infirmities resulting from the agent's fraudulent conduct or knowledge.

**Fairfield vs. Southport National Bank, 80 Conn., 92.**

**First National Bank vs. New Milford, 36 Conn. 93.**

This is particularly true where as in the present case, the principal was acting through a single agent in the transaction and that agent had the knowledge of the fraud.

**Connecticut Fire Ins. Co. vs. Commercial National Bank of San Antonio, Case No. 80047. CCA. Fifth Circuit, decided February 10, 1937.**

It is not possible to accept the distinction made by the Receiver in this case, that this limitation applies only in cases in which the agent is defrauding some third party and not in cases where the agent is defrauding the principal himself because that begs the question. The question itself in any case is as to who has been defrauded, the principal or the third party. When an agent, such as Brott in this case, takes bonds which he knows were stolen in order to secure a loan made by him on behalf of his principal, the Bank, who is to say whether his intent was to defraud the bank or to defraud the true owner of the bonds? The point is that he took the bonds ostensibly as agent for the bank, knowing that they were stolen. The only claim that the Bank has on the bonds comes through that act of Brott. If Brott hadn't taken the bonds as security for the notes the Bank would never have

had them in its possession. The transaction by which the Bank got possession of the bonds is not divisible. The Bank can not separate the taking of the bonds by Brott from the knowledge with which he took them. It therefore holds the bonds chargeable with the knowledge concerning them which was in Brott's mind at the time he took them.

That being the case it follows that the Bank took no title to the bonds as against the rightful owners thereof.

It is therefore found that five $1000. bonds of The Reynolds Investing Co., Nos. M 2127, M 2775, M 3401, M 3983 and M 4037, one $1000. bond of The Community Water Works, No. M 990 and one $1000. bond of The Peoria Water Works No. M 752 now in possession of the Receiver are the property of the United States Fidelity and Guaranty Co.; that five $1000. bonds of Onondaga Camillius and Geddes (N.Y.) Union Free School District No. 5, Nos. 6, 7, 8, 9 and 10 now in the possession of the Receiver are the property of The Fidelity and Deposit Co. of Maryland, The American Surety Co., The Massachusetts Bonding and Insurance Co., and The Aetna Casualty and Surety Co.; that two $1000. bonds of The Cities Service Co. Nos. 9100 and 9101 now in possession of the Receiver are the property of Frank B. Hower; and that two $1000. bonds of The Chicago District Electric Engineering Co. Nos. M 1594 and M 1595 now in possession of the Receiver are the property of The Fidelity and Casualty Co., and The National Surety Co.; and that the Receiver has no right, title or interest in any of those bonds.

It has been agreed that the Receiver has been requested by the Federal authorities to hold the bonds to be used as evidence in certain criminal proceedings. For that reason no order to turn over the bonds to the respective claimants should be entered at this time. That matter may be taken care of by further proceedings.